ORVILLE D. MORELAND, APPELLEE, V. TRANSIT AUTHORITY OF THE CITY OF OMAHA, DOING BUSINESS AS METRO AREA TRANSIT, APPELLANT.

352 N.W.2d 556

Filed June 29, 1984. No. 83-561.

Thomas C. Lauritsen of Swarr, May, Smith & Andersen, for appellant.

Robert E. O'Connor, Jr., of Robert E. O'Connor & Associates, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, and SHANAHAN, JJ., and COLWELL, D.J., Retired.

KRIVOSHA, C.J.

The appellant, Transit Authority of the City of Omaha (MAT), appeals from an order entered by the district court for Douglas County, Nebraska, directing MAT to pay to the appellee, Orville D. Moreland, an employee of MAT and a local member of the Transport Workers Union of America (TWU), short-term disability payments which Moreland

claimed to be entitled to receive under the terms of a collective bargaining agreement entered into between MAT and TWU on July 1, 1975, and effective until June 30, 1977. MAT maintains that the trial court erred in finding that the contract previously entered into by and between MAT and TWU, which expired on June 30, 1977, was extended by a letter from MAT to TWU dated July 27, 1977. MAT further maintains that the trial court erred in finding that the express language of the agreement, even if it was continued in effect, entitled employees of MAT who were members of TWU to receive short-term disability benefits for work-related injuries in addition to workmen's compensation benefits, and in not finding that the general practice, policy, and procedure of MAT was to deny payment and coverage of short-term disability benefits to employees who had received workmen's compensation benefits for the same injury. Our review of the record convinces us that the trial court was clearly correct in its decision, and the judgment of the district court is affirmed.

Moreland was injured in a work-related accident on September 27, 1977. In addition to receiving workmen's compensation benefits, he sought payment from MAT under the provisions of the contract which had been entered into by and between MAT and TWU effective July 1, 1975. The contract had expired by its own terms on June 30, 1977, and, because the parties were involved in a labor dispute, a new, formal contract was not executed between the parties until July 1, 1979.

The first question, then, is whether the terms of the agreement dated July 1, 1975, which expired on June 30, 1977, were in some manner extended beyond June 30, 1977, and were effective during the time that Moreland was injured. We believe that the record supports the finding by the trial court that MAT had voluntarily extended certain portions of the contract, including the provisions for short-

term disability, beyond June 30, 1977, and that the provisions for short-term disability under the contract were in effect on the day that Moreland was injured.

We have recently held that the Commission of Industrial Relations (CIR) may enter temporary orders affecting wages, hours, and terms and conditions of employment during a period of impasse. *Transport Workers v. Transit Auth. of Omaha*, 216 Neb. 455, 344 N.W.2d 459 (1984). Obviously, then, if the CIR may order such matters, the parties can voluntarily enter into such an agreement. We believe that the evidence clearly establishes this is precisely what took place in the instant case.

On July 27, 1977, MAT wrote to the TWU negotiating committee. The letter reminded the negotiating committee

that as of June 30, 1977, there was a verbal agreement between the negotiation teams of Metro Area Transit and Local 223 to extend the collective bargaining agreement with a provision for retroactivity. The extension of the contract and retroactivity were contingent on obtaining a negotiated settlement within a reasonable period of time or if either party filed in the Court of Industrial Relations, the verbal agreement was terminated.

The letter then advised the negotiating committee that MAT had filed a petition with the CIR and, therefore, the agreement was terminated effective with the MAT filing. The letter went on, however, to advise the negotiating team that, while the contract was terminated, certain provisions would be maintained. Specifically, the letter said, "Please be advised that while the contract is terminated, we will maintain our standard working conditions and general practices, policies and procedures." The meaning of this letter and MAT's position regarding short-term disability benefits were further clarified when, on July 10, 1978, MAT, still unable to reach an

agreement with TWU, wrote to all of its employees concerning "Increases in Wages and Fringe Benefits." The letter, in part, read:

The Board of Directors understood that going to the Court of Industrial Relations would most likely involve a delay (now about one year) before a decision could be obtained. The Board of Directors also understood that any long delay could cause a financial hardship for you. As a result the Board directed the staff to put *the first year provisions of the final offer into effect.*

(Emphasis supplied.) Thereafter followed a list of the benefits which became effective as of *July 17, 1977,* including item 3, entitled "Insurance Plan." Specifically, item 3.a. read, "Short term disability increased from $12.00/day to $13.50/day." The letter of July 10, 1978, then went on to advise the employees that there had been very little action by the "Court of Industrial Relations in the past year," and stated:

Therefore, at the regular Board of Directors meeting held on June 29, 1979, the Board authorized the staff to put the provisions of the second year of the final offer into effect.

Benefits effective July 1, 1978, are:

. . . .
2. . . .

. . . .
c. Short Term Disability increases from $13.50/day to $15.00/day.

Whether one argues that by reason of these various letters the contract entered into on July 1, 1975, which terminated by its own terms on June 30, 1977, was extended during the period of impasse or that by reason of these letters the short-term disability provisions were made a part of the temporary working conditions voluntarily granted by MAT to TWU makes little difference to the result reached in this case. What is clear, beyond question, is that when Moreland was injured on September 27, 1977, MAT

had, as one of its "temporary" working conditions, its previous short-term disability benefit, except that the dollar amounts had been increased pursuant to its last final offer. A written contract which is couched in clear and unambiguous language is not subject to a construction other and different from that which flows from the language used. See *Bishop Cafeteria Co. v. Ford*, 177 Neb. 600, 129 N.W.2d 581 (1964). See, also, *Kansas-Nebraska Nat. Gas Co., Inc. v. Swanson Bros.*, 215 Neb. 398, 338 N.W.2d 774 (1983); *Bass v. Dalton*, 213 Neb. 360, 329 N.W.2d 115 (1983). Therefore, if Moreland came within the meaning of the short-term disability provisions, he was entitled to compensation.

Not only does MAT argue that the contract is ambiguous but MAT further argues that TWU's position is contrary to MAT's past practices and policies. While we believe that the contract is clear and unambiguous and, therefore, does not require interpretation, we believe that it is important to point out the baselessness of MAT's current position and to point out why this controversy borders nearly on the frivolous.

The record reflects that there have been at least three contracts entered into between MAT and TWU prior to Moreland's injury, all of which contain a provision for short-term disability, and all of which contain substantially the same provisions except for the dollar amounts. The provisions for short-term disability read as follows:

Section 1. The Authority shall provide a short term disability benefit for *all* participating employees.

Section 2. The benefits will be $10.00 per day beginning with the fourth (4) day of illness, with the first (1) day if injured in an accident or hospitalized for any reason. Maximum benefits will be $1,210.00 drawn in any 181 day period. An employee who exhausts this benefit must work ninety (90) days to have full benefits restored. A

doctor's statement of illness, injury, hospitalization and diagnosis is required for payment of benefits to commence. Effective July 1, 1976, Benefits shall increase to $12.00 per day. Maximum benefits will be $1,452.00, drawn in any 181 day period. All requirements as stated above shall remain in effect.

(Emphasis supplied.)

MAT argues that under the terms of this agreement only employees who sustain accidents or hospitalization *not* related to work are eligible to receive the benefits of the short-term disability. It argues further that any employee receiving workmen's compensation by reason of an accident arising out of or in the course of his employment is not entitled to this payment because it would constitute what MAT describes as "piggybacking." We believe that the plain language of the contract provision is to the contrary. Section 1 provides that it is a benefit "for all participating employees," without any restrictions or reservations. And, likewise, § 2 provides that one is entitled to these benefits if injured in an accident or hospitalized "for any reason." As we have said on an earlier occasion, there are few words in the English language which are as all-encompassing as "all." *Kellogg Company v. Herrington*, 216 Neb. 138, 343 N.W.2d 326 (1984). Had MAT desired to limit the provisions of the short-term disability benefits, it would have been relatively easy to do so. As a matter of fact, in an earlier provision in the contract providing for permanent disability income, MAT knew exactly how to prevent "piggybacking." Each agreement contained a provision for disability income. Section 3 of that article provided: "No employee shall receive a permanent disability income and at the same time be eligible for normal retirement income benefits." It seems clear that employment-related accidents are not excluded under the clear language of the agreement.

In each contract entered into between MAT and TWU, there has been a provision entitled "Short Term Disability." The provisions in each of the contracts are substantially the same, except for the dollar amounts, which were increased first from $10 to $12, then to $13.50, and finally to $15 per day.

There is another significant difference in the provisions of these contracts. In the contract first entered into between MAT and TWU, effective July 1, 1973, to July 1, 1975, the provision for short-term disability, which was Article XIX, was not entitled "Short Term Disability," but, rather, was entitled "Relief Association." Also in the evidence is the "CONSTITUTION AND BY-LAWS OF THE METRO AREA TRANSIT EMPLOYEES RELIEF ASSOCIATION," which was organized on July 8, 1901, and continued in existence until it was taken over by MAT as part of the employment agreement entered into between MAT and TWU on July 1, 1973, and is what is referred to in Article XIX. A reading of the constitution and bylaws of the Metro Area Transit Employees Relief Association makes it clear that the purpose of the association was to create a self-supporting employees' relief association whereby employees could pay small amounts of money into this relief association and, in the event of injury or illness from whatever cause, receive benefits. The association was not unlike a host of fraternal assessment associations created at the turn of the century to aid and assist workers who were injured on the job or became ill off the job. In any event, it is clear that MAT was attempting to provide short-term disability by taking over the provisions of the relief association, which had no restrictions. This is further supported by the fact that on February 6, 1974, after MAT had entered into the contract with TWU and had taken over the responsibilities of the relief association, it wrote to the president of TWU Local 223 concerning this matter. The letter read in part:

According to our conversation, it is understood that Mutual of Omaha Short Term Disability Insurance will not cover employees injured in accidents covered by Workmen's Compensation. In the event that this does happen, Metro Area Transit will pay the usual amount as covered by the old Relief Association which was discontinued on January 7, 1974.

MAT argues that it had regularly refused to pay employees short-term disability benefits if they were also receiving workmen's compensation. The fact that MAT may have refused to meet its obligations and has chosen to violate the terms of its agreement does not relieve MAT of its obligations nor entitle it to create a new condition by fiat. During all of the time that MAT has refused to honor these claims, TWU has protested. In a letter dated February 25, 1976, the president of the local union wrote to MAT protesting its refusal to pay. The letter, in part, said: "In the minutes, and tapes of the 1973 contract negotiations it was agreed that Metro Area Transit would pay full cost, and take over administration of the Relief Association, but that benefits would be the same." And, again, on May 17, 1977, the union wrote to MAT objecting to its refusal to pay. And, in fact, TWU sought to enforce this provision by filing a petition with the CIR. It was only because this court later said that the CIR did not have jurisdiction that the matter was not then resolved. See *Transport Workers of America v. Transit Auth. of City of Omaha*, 205 Neb. 26, 286 N.W.2d 102 (1979).

Whether one concludes that the language of the short-term disability provisions is clear and unambiguous or one resorts to past practices as evidenced by the background and history of the benefit, one cannot reach any other conclusion but that MAT is obligated to pay its employees short-term disability, regardless of whether they are also receiving workmen's compensation. In view of MAT's letter of

February 6, 1974, one is compelled to wonder why MAT wishes to unnecessarily prolong this dispute with its own employees and to incur costs and expenses of litigation on a matter on which it recognized it had a duty years ago. In any event, the judgment of the district court was correct and is, in all respects, affirmed.

AFFIRMED.