OMAHA CITY EMPLOYEES LOCAL 251, AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, APPELLANT AND CROSS-APPELLEE, V. CITY OF OMAHA, A MUNICIPAL CORPORATION, ET AL., APPELLEES AND CROSS-APPELLANTS.

384 N.W.2d 271

Filed April 4, 1986.   No. 84-900.

Bruce G. Mason of Ross & Mason, P.C., and, on brief, Thomas F. Dowd of Dowd, Fahey, Dinsmore & Hoffman, for appellant.

Herbert M. Fitle, Omaha City Attorney, Kent N. Whinnery, and Denise A. Hill, for appellees.

BOSLAUGH, HASTINGS, CAPORALE, and SHANAHAN, JJ., and COLWELL, D.J., Retired.

HASTINGS, J.
This is a dispute over certain labor practices of the City of

Omaha. Two of the issues decided by the trial court were not appealed and are not discussed here.

Joseph Zenchuk, a regular semiskilled laborer in the classified service of the city, was discharged on June 15, 1982, while seasonal employees continued to be employed and perform some of the same tasks previously undertaken by Zenchuk. Omaha City Employees Local 251 (the union) sought a declaration that the layoff was impermissible, as well as a determination of damages for Zenchuk because of lost wages. Additionally, the union requested an order enjoining the city from hiring seasonal workers to perform work which the city carried on for the full 12 calendar months of each year.

The district court, inter alia, determined that Zenchuk was not wrongfully discharged, but ordered the city to discontinue hiring seasonal employees to perform work in areas which were carried on by the city for a period of time in excess of 9 months each calendar year. The union has appealed from the first finding, and the city has cross-appealed, objecting to the second finding.

Article 10, § 2, of the labor agreement between the union and the city provides that "[n]o regular employee shall be laid off from any classification while there are . . . seasonal . . . employees working in the same classification."

Omaha Mun. Code, ch. 23, art. I, § 23-1 (1980), provides in part as follows:

> *Class*: A position or group of positions that involve similar duties and responsibilities, require similar qualifications, and designated by a single title indicative of the kind of work.

> *Class specification*: The written description of a class including the title, statement of the duties and responsibilities, and the minimum requirements of education and experience appropriate upon entrance for satisfactory performance in a position of the class.

The majority of Omaha employees are regular employees in the classified service. The city also employs seasonal and part-time employees, who may or may not be classified. The qualifications, employment, and remuneration of regular classified bargaining unit employees are heavily regulated both

by city ordinances and the collective bargaining agreement. Regular classified employees receive many fringe benefits, including paid sick leave, paid vacations, paid holidays, insurance, and longevity pay.

The wage rate paid a regular classified employee is substantially higher than that paid an unclassified seasonal or part-time employee. As of January 1, 1984, a semiskilled laborer in the regular classified service, such as Joseph Zenchuk, had a pay range of $8.53 to $9.03 per hour. Unclassified seasonal employees, on the other hand, were paid $4.90 per hour regardless of their duties.

Employed in 1980 as a regular semiskilled laborer in the classified service in the traffic maintenance division, Joseph Zenchuk's duties included traffic sign installation, pavement marking, street striping, barricade placement, barricade repair, and sign painting. When outdoor work was prohibitive in January through April, Zenchuk and other regular employees repaired and maintained the striping machine.

While employed as a regular semiskilled laborer, Zenchuk worked with seasonal employees in the traffic maintenance division. In contrasting their job duties Zenchuk testified that seasonal and regular employees worked on the same crews, performing many of the same tasks. However, daily work assignments were given to the regular employees, who were responsible for seeing that the work was completed and instructions were followed. Furthermore, if equipment problems developed, it was the function of the regular employees to repair the machinery.

On May 28, 1982, Zenchuk was notified by the city of his layoff from his position with the traffic maintenance division, effective June 15, 1982. He refused to exercise his right to "bump down" to a lower-paying classification as an Automotive Equipment Operator I in the public safety department. With the exception of January, February, and March, seasonal employees were employed in the traffic maintenance division throughout Zenchuk's layoff period.

Zenchuk returned to the traffic maintenance division as a seasonal employee on April 15, 1983, and was reinstated as a regular semiskilled laborer on June 15. All of Zenchuk's duties

as a seasonal employee were duties he had performed as a regular employee.

The union argues that article 10, § 2, of the labor agreement prohibits the city from laying off a regular employee in the classified service while a seasonal employee is performing *any* of the job duties or functions included within the classification of a regular employee. The city insists, and the trial court agreed, that the agreement simply provides that a regular employee, a classified employee, cannot be laid off if there is a seasonal employee so designated in that same classification. We agree with the trial court's interpretation.

Where a contract is clear and unambiguous, it is not subject to a construction different from that which flows from the language used. *Moreland v. Transit Auth. of Omaha*, 217 Neb. 775, 352 N.W.2d 556 (1984).

The evidence discloses that when the City of Omaha hires seasonal employees, it may hire them under a regular classification, such as "seasonal semiskilled laborer," or as a "seasonal worker." Seasonal employees are hired under a regular classification if they are performing essentially the same duties and responsibilities of that classification.

The record discloses no seasonal workers employed under the same classification as Zenchuk at the time of his layoff. The findings of the trial court were correct in that regard. If the union desires to renegotiate this provision of the agreement to conform with its argument, it is free to do so at the next opportunity.

As to the second issue, Omaha Mun. Code, ch. 23, art. I, § 23-1 (1982), defines seasonal employment as "Employment of a *seasonal nature*, the duration of which does not exceed nine (9) calendar months." (Emphasis supplied.) The trial court interpreted this language to read, in effect, "employment *in a job* of a seasonal nature, the duration of which *job* does not exceed nine (9) calendar months."

Omaha Mun. Code, ch. 23, art. III, § 23-235 (1982), provides in part as follows: "Appointments to seasonal positions may be made by an appointing authority with the approval of the personnel director . . . . Seasonal appointments shall not exceed nine (9) months and successive seasonal

appointments to the same position shall not be made."
The union would have us read these sections to restrict seasonal appointments to occupations or positions which normally do not last beyond 9 months, such as golf course greenskeepers, lifeguards, snow shovelers, etc. By the same token, it would have us prohibit appointments of seasonal employees which "shall not exceed nine (9) months" to positions in accounting, finance, and paving repairs during peak seasons involving budgeting, tax assessment, and summer paving repairs, simply because these occupations generally are carried on 12 months a year, although less intensive in nature during certain times of the year.

We are not prepared to judicially amend the plain meaning of the ordinance to arrive at that conclusion. "The adoption of ordinances under the police power is a legislative act and the courts cannot interfere with such matters by attempting to mandate their adoption or amendment." *Schaffer v. City of Omaha*, 197 Neb. 328, 331, 248 N.W.2d 764, 766 (1977).

The judgment of the district court, insofar as it interpreted the municipal code as to the meaning of seasonal employees, was incorrect, and it is reversed.

AFFIRMED IN PART, AND IN PART REVERSED.
KRIVOSHA, C.J., participating on briefs.