CHARLES A. FORSLUND, APPELLEE, V. HENRY F. SWENSON ET AL., APPELLANTS.

FILED APRIL 21, 1923. No. 22353.

1. **Trial**: APPORTIONMENT OF DAMAGES. A jury may not in a verdict against joint tort-feasors apportion the amount of damages which each shall pay.

2. ———: VERDICT. In an action for personal injuries against joint defendants, the jury returned into court with a verdict assessing the damages against one defendant at the sum of $5,000, and against the other at $2,500. The court refused to receive the verdict, and instructed the jury to correct the verdict by simply finding the amount of plaintiff's damages, if any. After further consideration by the jury, a verdict was returned against both defendants for $7,500. *Held*, that this was proper practice, and that the verdict, as finally delivered, was valid.

3. ———: JURY: POWERS OF COURT. Section 8806, Comp. St. 1922, relating to the polling of a jury, does not deprive the court of any of its former powers.

4. **Evidence** examined, and held to support the verdict.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Affirmed*.

*Stout, Rose, Wells & Martin, Jefferis, Tunison & Wilson* and *Ralph A. Van Orsdel*, for appellants.

*Gurley, Fitch & West, contra*.

Heard before MORRISSEY, C. J., LETTON, DAY and DEAN, JJ., BUTTON, District Judge.

LETTON, J.

This is an appeal from a judgment against defendants rendered in an action for personal injuries. Plaintiff alleges that he was severely injured by the overturning of an automobile which he was driving, by reason of it coming in contact with a pile of coal which had been negligently placed and suffered to remain in a street by the defendants. There is much conflict in the evidence, but the jury adopted the theory of plaintiff.

The facts are as follows: Defendant Swenson, who resides on the north side of Hawthorne avenue in Omaha, and upon the east side of a driveway leading to the rear part of the lot, had ordered from defendant Rosenblatt, a coal dealer in the city, a number of tons of semi-anthracite coal. Part of the coal was to be delivered by the coal dealer into bins in the cellar of an apartment house at No. 3624 Hawthorne avenue. According to the testimony of teamsters employed by Rosenblatt, when they attempted to deliver the coal as ordered, Mrs. Swenson told them that the bins in the cellar were not ready, and directed them to unload the coal in the street near the driveway, which they did. Several tons of the coal were unloaded, part of it in the parking space next to the north curb line, and the greater part in the street east of the driveway.

A lantern with a red light was placed upon the coal pile on the first night. The next afternoon one of Rosenblatt's men took a red lantern to Mrs. Swenson, who said she would see that it was lighted and placed upon the pile of coal that night. This was not done until after the accident. Plaintiff was driving a Ford automobile with the top down, occupying the front seat. There were two women in the back seat. He drove from the north into Hawthorne avenue a short distance west of the place of the accident, and turned eastward on that street. He testifies that he was driving about 10 miles an hour, and that it was very dark on the street.

There is some evidence that, not only was there a pile of coal near the north curb, but lumps of coal were

scattered at intervals from the north to the south curb of the street. The paved portion of the street is 20 feet in width. Plaintiff testifies that, as he drove along, the first he knew was a sudden jerk, then he felt himself going out of the car, but was unable to tell where he lit. He was found by a man, who heard the crash, lying close to the north curb of the street a few feet east of the coal pile. The automobile was lying on its left side, facing northward on the east side of the east coal pile, with the right front wheel broken and the engine still running. The women were thrown out toward the south, or at least, when first seen, were southward of the car near the south side of the street.

There was evidence on the part of defendants that there were some scratches, or marks, on the curb at the south side of the street a little west of the coal pile, and that some broken spokes from the wheel were found not very far from that point. Defendants insist that the physical facts in evidence conclusively establish that the plaintiff so carelessly drove his car against this curb as to smash the wheel, and as a result the car was diverted across the street to the position where it was found on the coal pile. We consider, however, that the determination of the question whether the car struck the south curb, which collision caused its collapse, or whether it struck a lump of coal in the street, or the coal pile on the north side of the street, was a question for the jury, and that, in the state of the evidence, the conclusion drawn by them from the testimony should not be disturbed by a reviewing court. While each of the defendants attempts to establish his freedom from negligence, we think the facts are sufficient to support the verdict for damages in favor of the plaintiff against both of them. It was negligence on the part of Rosenblatt to unload the coal in the public street and leave it without a danger signal at night. Proper precautions were taken by him the first night, but the second night he relied upon Mrs. Swenson to perform this duty, and for her negligence he is liable. It is true

Forslund v. Swenson.

she denies the testimony of Rosenblatt's witnesses, but the jury accepted their version of the facts. It was within the knowledge of defendant Swenson that the coal he had ordered had been unloaded on the street in front of his premises. Mrs. Swenson had at least apparent authority to direct the men delivering the coal as to what should be done with it, when the bins were not ready. She directed that it be placed in the street, and Swenson, having knowledge that the coal in process of delivery to him was lying in the street, took no steps to warn travelers upon the highway, or to protect them from danger incident to the coal being in such a position. The jury were warranted in finding that the accident resulted from the joint negligence of defendants.

A question arises from circumstances which happened at the trial. The jury first returned a verdict against Swenson for $5,000, and against Rosenblatt for $2,500. The court refused to receive this verdict, and instructed the jury as follows:

"Your verdict is not in proper form, in that it attempts to assess damages in different amounts against the two defendants. You should simply find the amount of plaintiff's damages and insert the same at the proper place in the form of verdict if you find for the plaintiff. Another form of verdict is submitted, which you will have your foreman sign after filling in the amount of damages, if any you find."

After further consideration by the jury, a verdict was returned against both defendants for $7,500. At the hearing, upon a motion for a new trial, it was ordered that the same should be allowed, unless defendants filed a remittitur of $1,500. This was done, and a judgment for $6,000 rendered. Rosenblatt now presents the proceedings taken in connection with the receipt of the verdict as one of the errors assigned. His argument is that the powers of the court with reference to the rendition of a verdict are limited and circumscribed by the provisions of section 7862, Rev. St. 1913 (Comp. St. 1922, sec. 8806),

and that when the first verdict came in plaintiff should either have been required to elect to take judgment against one defendant on the verdict, with the right to dismiss without prejudice as to the other, or at most judgment should have been rendered on the verdict in accordance with the terms. This section applies to the condition arising when a juror dissents when the jury is being polled, and does not deprive the court of any of its former powers.

It is pointed out in *Nashville Railway & Light Co. v. Trawick*, 118 Tenn. 273, 10 L. R. A. n. s. 191, and in the annotation to the case, that the practice of the courts has not been uniform with respect to a situation where the jury has undertaken to apportion the damages between joint tort-feasors.

In some of the states where the courts have passed upon this question, punitive damages are allowed, and in some cases in such states it is held that, where one defendant has been guilty of an aggravated trespass, or tort, and the wrongful act of another has not been accompanied with malice or wanton disregard of the rights of the injured party, the verdict should be set aside and a new trial awarded. In other states, where punitive damages are not allowed, it is usually held that the judgment against all should be for the higher sum stated in the verdict, since that is the amount of damages plaintiff has been found to have sustained. In this state, where punitive damages are not allowed, a new trial would in ordinary cases be unnecessary.

In *Halsey v. Woodruff*, 26 Pick. (Mass.) 555, a verdict of $75 was rendered against Halsey, and a separate verdict of $2 against Avery. The court rendered judgment against both for $75 and costs, saying:

"The result of the authorities, which are numerous, is that, where a joint action is brought against two for a trespass done, and there is a judgment against both, it must be a judgment for joint damages. All the legal consequences of there being a joint judgment must neces-

sarily follow; one of which is, that each is liable for all the damage which the plaintiff has sustained by such trespass, without regard to different degrees or shades of guilt."

In *Beal v. Finch,* 11 N. Y. 128, it was held, citing *Halsey v. Woodruff, supra,* that each defendant was liable for all damages sustained without regard to shades of guilt. See 2 Viner's Abr. 303.

In *Fuller v. Chamberlain,* 11 Met. (Mass.) 503, a joint action of trespass was brought against five persons. A verdict was rendered on one count assessing the damages against three defendants "at the sum of seven dollars and eighty-three cents each, $23.49." The judge informed the jury that the damages must be joint, and directed a verdict to be drawn up in the proper form for the aggregate sum of $23.49 on the third count against the three defendants named in the verdict. The defendants moved in arrest of judgment because the verdict on the third count should be for the sum of $7.83, and no more. The court said:

"The paper sealed up by the jury was not technically a verdict. Such a paper is not a verdict till it is affirmed and recorded. * * * When the sealed paper was opened, it was rightly explained to the jury, by the judge, that the law required joint damages. They had already found that the plaintiff ought to receive for his indemnity $23.49, the aggregate of the three several sums. They adopted the amendment (not having been discharged), unanimously affirmed it as their verdict, and authorized it to be so recorded."

In the case at bar the jury attempted to do what they had no power to do, apportion the damages between the wrongdoers. On this fact being properly called to their attention, they corrected the verdict, which they had a right to do. The trial court, in calling the attention of the jury to the defect in the verdict and affording them an opportunity to correct the same before ending their deliberations, adopted a simple, practical and legal method. The instructions clearly present all the issues in the case,

including contributory negligence on the part of plaintiff. We find no error.

AFFIRMED.