IRENE M. EICH, APPELLEE, V.
STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, A FOREIGN CORPORATION, APPELLANT,
AND DAVID J. WOJCIK, APPELLEE.

305 N.W.2d 621

Filed May 8, 1981.   No. 43271.

Wayne J. Mark of Fraser, Stryker, Veach, Vaughn, Meusey, Olson and Boyer, P.C., for appellant.

Daniel G. Dolan for appellee Eich. No appearance for appellee Wojcik.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

Plaintiff Eich brought this action in the District Court for Douglas County, Nebraska, against State Farm Mutual Automobile Insurance Company and David J. Wojcik, an uninsured motorist, to recover damages for personal injuries received in a collision between an automobile driven by the plaintiff and one operated by Wojcik.

In order that the assignments of error hereinafter considered be seen in proper perspective, it is necessary to first summarize more of the background information than is ordinarily required.

State Farm insured the plaintiff's automobile and, in one or more other separate policies, other automobiles in the Eich household. The amended petition upon which the case was tried made the necessary allegations to state a cause of action against Wojcik founded upon his negligence, and further alleged the issuance of two policies of insurance by State Farm which provided uninsured motorist coverage for Eich.

State Farm filed a demurrer to the petition on the ground of misjoinder of causes of action and of parties defendant. This motion was overruled and State Farm was directed to answer.

State Farm, after first denying Wojcik's negligence and alleging contributory negligence on the part of the plaintiff, later filed an amended answer in which it admitted that Wojcik was negligent and

that such negligence was a proximate cause of the accident. It admitted the existence of one certain policy of insurance which afforded uninsured motorist coverage to Eich and admitted that Wojcik was an uninsured motorist. At the same time it filed an offer to confess judgment in the amount of $15,000.

Wojcik defaulted. However, in a deposition he admitted that he drove through a stop sign and collided with the Eich automobile and that he had been drinking at the time. This deposition was later received in evidence at the trial.

The court directed a verdict against Wojcik and State Farm on the issue of liability and left to the jury only the question of the amount of damages proximately caused by the collision. It instructed the jury that State Farm had in force at the time of the accident three policies of insurance under which it was obligated to pay all sums which the plaintiff had sustained as damages, not to exceed $45,000. It further instructed the jury that the amount of the insurance was not a factor to be considered by them in determining the amount of damages to which the plaintiff was entitled.

The form of the verdict prepared by the court for the use of the jury in rendering its verdict was in the following form: "We, the jury duly impaneled and sworn in the above entitled cause, do find for the said plaintiff and assess the amount of plaintiff's recovery as to defendant State Farm in the sum of $___, and as to defendant David J. Wojcik in the sum of $___."

The jury returned a verdict in which it placed in each of the blank spaces in the form the sum of $17,500. The jury was discharged on December 12, 1979. The court entered judgment on the verdict as follows: "Pursuant to verdict of December 12, 1979, ordered, that plaintiff have and recover from the defendants jointly and severally, the sum of $17,500.00, plus plaintiff's taxable costs."

On December 18, 1979, the plaintiff filed a motion in the following form: "Comes now the plaintiff and

respectfully requests the Court to correct a ministerial error of the judgment entry to accurately reflect the intentions of the jury as it was their intention to totally award the plaintiff the sum of $35,000.00 in damages for the injuries sustained as supported by the attached affidavit which is marked Exhibit 'A' and attached hereto." Exhibit A referred to in the motion was an affidavit of the foreman of the jury which stated that it was the intent of the jury panel to award the plaintiff the total amount of $35,000.

The plaintiff filed an alternative motion in the following form: "Comes now the plaintiff and alternatively requests the Court to reassemble the jury to correct or amend their verdict as to the form."

On December 27, 1979, the trial judge reassembled the jury, interrogated each of the jurors, and then entered the following order on the verdict form: "The court orders clerk to correct verdict form to read as follows: 'We, the jury duly impaneled and sworn in the above entitled cause, do find for the said plaintiff and assess the amount of plaintiff's recovery as to defendant State Farm in the sum of $35,000.00 and as to defendant David J. Wojcik in the sum of $35,000.00.' Pursuant to verdict, ordered, that judgment entered December 13, 1979, be and the same is hereby vacated. It is further ordered that the plaintiff have and recover from the defendants, jointly and severally, the sum of $35,000.00, plus plaintiff's taxable costs. Jurors are discharged. /s/ (Buckley)"

State Farm appeals to this court and urges, among other things, that the trial court erred: (1) In overruling the demurrer, based on misjoinder of causes of action and of defendants; (2) In instructing the jury on the policy limits; (3) In giving an instruction which permitted the "stacking" of three policies affording uninsured motorist coverage; and (4) In receiving the jurors' affidavits, and in reassembling the jury and entering a modified verdict.

We sustain the assignments in part, and reverse

and remand for a new trial on the issue of damages only.

We will discuss the claims of error in the order listed.

Could the plaintiff, under the Nebraska statutes governing joinder clauses, combine in one action her cause against her own insurer and the cause against the uninsured motorist? This question is presented to this court for the first time.

Because of inherent and unavoidable conflicts of interest which arise between the insured and the insurer where recovery is sought under uninsured motorist coverage, many procedural problems, including that related to joinder, arise. The courts of the various jurisdictions have not been able to resolve these problems in a uniform way. See Widiss, Uninsured Motorist Coverage §§ 7.2 to 7.15 (1969). Indeed, because of the unique nature of uninsured motorist coverage, it is difficult to resolve these problems by applying logic to established principle. Sometimes merely pragmatic solutions must be reached, and that is what we do in this case.

We conclude, for reasons hereinafter set forth, that the court erred in overruling the demurrer. However, we also conclude that, since there must be a retrial for other reasons and because liability has been admitted by State Farm and clearly established by the evidence against Wojcik, the error in joinder is essentially harmless because, on retrial, the cases may be separately docketed and retrial on the tort action will be on the issue of damages only.

Neb. Rev. Stat. §§ 25-701 and 25-702 (Reissue 1979) lay down the rules as to joinder of causes. Those sections permit joinder only within certain described classes, and with one exception not here applicable the causes united must affect all parties to the action and not require different places of trial. Insofar as the causes before us here are involved, the only classes described in the statute which we must consider are: "(1) The same transaction or transactions connected with the

same subject of action; (2) contracts, express or implied; (3) injuries with or without force . . . ." § 25-701.

The action against Wojcik clearly sounds in tort and comes within class (3). The cause of action against State Farm is clearly founded on contract and comes under class (2). Its contractual obligation depends, however, upon establishing Wojcik's tort liability. At least one court has held that joinder in cases such as this is permissible because the causes relate to the "same subject of action."

Section 25-702 lays down the further requirement that the causes of action so united must affect all the parties to the action. Although it is true that the action against Wojcik affects State Farm, the contractual action against State Farm does not directly affect Wojcik. See *Fuchs v. Parsons Constr. Co.*, 166 Neb. 188, 88 N.W.2d 648 (1958).

We hold that under the above statutes governing joinder, the joinder in a single action of the cause against the uninsured motorist with the insurer carrying the uninsured motorist coverage for the claimant is not permissible. *State ex rel. Cozean v. Meyer*, 449 S.W.2d 377 (Mo. App. 1969) (identical statute and the same relationship of the parties as in the case before us); *Wells v. Hartford Accident and Indemnity Company*, 459 S.W.2d 253 (Mo. 1970); *State v. James*, 263 S.W.2d 402 (Mo. 1953).

On remand, the plaintiff shall be permitted to file separate petitions, which shall be separately docketed under the provisions of Neb. Rev. Stat. § 25-809 (Reissue 1979), and the causes shall proceed without further service.

This opinion should not be understood to hold that the insured may never sue his insurance company without having first obtained a judgment against the uninsured motorist. There are probably instances in which the tort liability may be determined in an action against the insurance carrier, e.g., under "hit-and-run" coverage or in cases where service cannot

be obtained on the uninsured motorist.

As already noted, however, the error in refusing to overrule the demurrer does not require a retrial on all issues. Any prejudice resulting from the prior joinder may be cured simply by trying the damage issue only in the cause against Wojcik. The direction of the verdict on liability against Wojcik was correct. The insurer had its day in court on that issue. The interest of the insurer on the damage issue may properly be protected by its intervention in that action. This court long ago established the method by which the insurer's interest may be protected, and that is by intervention. *Heisner v. Jones*, 184 Neb. 602, 169 N.W.2d 606 (1969). The cause can be retried without disclosing to the jury the insurer's participation in the trial. The court should not instruct the jury as to the existence of the liability insurance or the monetary limits of coverage. *Walls v. Horbach*, 189 Neb. 479, 203 N.W.2d 490 (1973).

Did the District Court err in permitting the uninsured motorist coverage in each of the three policies in which plaintiff was an insured to be "stacked"?

Coverage U of the State Farm policy provided: "To pay all sums which the *insured* or his legal representative shall be legally entitled to recover as damages from the owner or operator of an *uninsured motor vehicle* because of *bodily injury* sustained by the *insured*, caused by accident and arising out of the ownership, maintenance or use of such *uninsured motor vehicle* . . . ." Then follow provisos which require the issues of liability and damages to be determined by submitting to arbitration if agreement cannot be made between the insured and the claimant; that judgment against an uninsured motorist is not conclusive against the company; and a requirement that consent of the company be obtained before the claimant can sue the uninsured motorist. All of these provisos we held void in *Heisner v. Jones, supra.* Then followed various exclusions, among which is the following: "(b) TO *BODILY INJURY* TO AN *INSURED* WHILE

*OCCUPYING* OR THROUGH BEING STRUCK BY A LAND MOTOR VEHICLE OWNED BY THE NAMED INSURED OR ANY *RESIDENT* OF THE SAME HOUSEHOLD, IF SUCH VEHICLE IS NOT AN *OWNED MOTOR VEHICLE.*" Owned motor vehicle, as used in the exclusion, is defined as meaning "the motor vehicle . . . described in the declarations . . . ." The remainder of the definition is not relevant to the question before us.

Neb. Rev. Stat. § 60-509.01 (Reissue 1978) requires that all policies issued contain uninsured motorist coverage. The statute, however, gives the insured the option to reject such coverage.

In support of its position, State Farm relies upon our holdings in *Shipley v. American Standard Ins. Co.,* 183 Neb. 109, 158 N.W.2d 238 (1968), and *Herrick v. Liberty Mut. Fire Ins. Co.,* 202 Neb. 116, 274 N.W.2d 147 (1979). In *Herrick,* the exclusion was as follows: "Exclusions This policy does not apply: * * * Under the Uninsured Motorists Coverage, (q) to bodily injury to an insured while occupying a highway vehicle (other than an insured automobile) owned by the named insured or by any person resident in the same household who is related to the named insured by blood, marriage or adoption, or through being struck by such a vehicle; * * *." In *Shipley,* the exclusion was of similar import. In both of the above cases the insured claimant was operating an owned uninsured motorcycle. In the first case, the claimant owned an insured automobile. In the second, the claimant was an insured in an automobile owned by his parents. Policies in both cases included uninsured motorist coverage. We there upheld the exclusion. The rationale is expressed in the following language from *Herrick, supra* at 119, 274 N.W.2d at 149: "It is difficult to find a policy in the statute to protect one uninsured motorist from another uninsured motorist. This is what the Shipley case referred to when it stated: 'An overriding public policy of protecting an owner-operator who inexcusably has

no applicable bodily injury liability coverage is not presently discernible.'

"In Holcomb v. Farmers Ins. Exchange, 254 Ark. 514, 495 S.W.2d 155, the court stated: 'It is a matter of common knowledge that in most automobile use related injuries two automobiles and drivers are involved. Under the broad coverage insisted on by the appellants, by the purchase of single coverage on one automobile an owner could protect himself and his entire family against financial loss caused by uninsured motorists while each of them are themselves driving uninsured . . . automobiles.'"

We believe the controlling decisions of this court are *Bose v. American Family Mut. Ins. Co.*, 186 Neb. 209, 181 N.W.2d 839 (1970); *Protective Fire & Cas. Co. v. Woten*, 186 Neb. 212, 181 N.W.2d 835 (1970).

The language of the exclusion in the case before us is somewhat different from that in *Protective Fire, supra,* and *Bose, supra,* in that it defines owned automobile as one described in the declarations, while in the two above cases the policy referred to an owned automobile (other than an insured automobile).

It is to be noted that in the present case the automobiles are each automobiles described in the declaration of the policy covering the particular vehicle. Each, therefore, was an insured automobile. A premium was paid in each case for uninsured motorist coverage. Had the plaintiff been a pedestrian struck by an uninsured motorist, she would clearly have had coverage under each of the three policies. Logically, State Farm's argument would, in that case, mean that the plaintiff had to elect, when she filed suit, the policy under which she wanted to be covered. We think that *Bose, supra,* and *Protective Fire, supra,* in principle cover the present case.

In *Protective Fire, supra,* the deceased was a guest passenger in an insured automobile. The deceased claimant also had uninsured motorist coverage by reason of being an insured in the policy covering the

family car. In *Bose, supra,* the two claimants were both covered by insurance on two family cars, each in a separate policy. The sum of the damages for personal injuries suffered by each claimant exceeded the minimum coverage afforded to each ($10,000) by a single policy. The defense was "the excess escape" clause. We held it did not apply and permitted recovery under both policies.

Our holding in *Pettid v. Edwards,* 195 Neb. 713, 240 N.W.2d 344 (1976), is, in my judgment, logically irreconcilable with *Bose, supra,* and *Protective Fire, supra.* Nonetheless, even if we adhere to the distinction there made, i.e., multiple car coverage in a single policy as opposed to multiple car coverage in separate policies, that case would not govern here.

The final assignment of error pertains to the reassembling of the jury after its discharge, interrogation of the jury by the judge as to the verdict it intended to render, and modification of the verdict by the judge based upon the interrogation.

Neb. Rev. Stat. § 25-1123 (Reissue 1979) provides: "The verdict shall be written, signed by the foreman, and read by the clerk to the jury, and the inquiry made whether it is their verdict. If any juror disagree, the jury must be sent out again; but if no disagreement be expressed, and neither party requires the jury to be polled, the verdict is complete, and the jury discharged from the case. If, however, the verdict be defective in form only, the same may, with the assent of the jury before they are discharged, be corrected by the court."

This court has long held, without reference to the foregoing statute, that where a defect in a verdict is in form only, the court may direct the jury to amend it, or it may be amended by the court without the consent of the jury before it is discharged. *Davis v. Neligh,* 7 Neb. 78 (1878). Defects which are matters of substance must be corrected before the jury is

discharged. *Forslund v. Swenson,* 110 Neb. 188, 192 N.W. 649 (1923).

It is clear that the amendment in this case was more than a matter of form. It was one of substance. It related to the amount of the verdict against defendants and whether the verdict was several or a joint judgment for a single amount. The plaintiff's claim against the uninsured motorist personally is not limited to the amount of uninsured motorist coverage under his own policy. The liability of the insurer, of course, is limited by the amount of the coverage, as well as by the damages determined to have been actually incurred. It is true, of course, that generally speaking a verdict against the uninsured motorist for more than the amount of the uninsured motorist coverage is uncollectable. However, that is not a limitation on the rights of the claimant against the tort-feasor.

Other jurisdictions under identical or virtually identical statutes have held that, after acceptance of a jury verdict and discharge of the jury, the court is without authority to change the verdict. *M & P Stores v. Taylor,* 326 P.2d 804 (Okla. 1958); *Quarring v. Stratton,* 85 Wash. 333, 148 P. 26 (1915). See, also, *Chicago, Rock Island and Pacific Railroad Co. v. Speth,* 404 F.2d 291 (8th Cir. 1968).

The judgment is reversed and the cause remanded for further proceedings in accordance with this opinion. REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

BOSLAUGH and WHITE, JJ., concur in result.

KRIVOSHA, C.J., concurring in result.

I concur in the result reached by the majority in this case. I believe, however, that much of the difficulty and confusion which cases of this type create could easily be resolved if we would simply recognize the reality of the matter and permit the insured under an "uninsured motorist" policy provision to directly sue its insurance carrier on the basis that the action really is one arising out of contract, though the right to actually

recover and the amount of recovery is based upon another's negligence. To suggest that we must not utter the words "insurance company" else unsuspecting jurors will reject their statutory duty and cease to be fair and impartial is unsupported in fact and serves no useful purpose.

The inconsistency of the matter is made even clearer when we recognize that we permit the carrier to intervene at *its* discretion, though we must not explain to the jury who the intervenor is or who it is that its counsel represents. The justification for permitting the carrier to intervene is founded upon the provisions of Neb. Rev. Stat. § 25-328 (Reissue 1979) which permit any person who has or claims an interest in the matter in litigation to join either the plaintiff or the defendant. I am, however, unable to find any language in that statute which says that once a party has made that election it may remain anonymous throughout the trial. I acknowledge that that has been our practice; I simply question the authority for doing it.

Those jurisdictions which have simply faced up to the issue appear not to have suffered any significant dire consequences.

The majority suggests that there may be instances where such action as proposed here might be appropriate, such as in the case of "hit-and-run" drivers. I do not perceive the basis for having two rules; one when the negligent driver is known and another when unknown.