MARGARET CHARLEY, PERSONAL REPRESENTATIVE OF THE
ESTATE OF ALBERT CHARLEY, APPELLANT, V. FARMERS MUTUAL
INSURANCE COMPANY OF NEBRASKA, APPELLEE.

366 N.W.2d 417

Filed April 26, 1985.   No. 84-013.

George H. Moyer, Jr., of Moyer, Moyer, Egley & Fullner, for appellant.

Noyes W. Rogers of Leininger, Grant, Rogers & Maul, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

On September 19, 1980, Albert Charley was struck and killed by an uninsured motorist. His widow and personal representative, Margaret Charley, brought a contract action against Farmers Mutual Insurance Company of Nebraska, which, through a single automobile liability insurance policy issued to the Charleys, provided uninsured motorist coverage on each of the two automobiles owned by them. The jury found the death to have been the proximate result of the uninsured motorist's negligence and returned a verdict in favor of Margaret Charley for $125,000. She then moved for judgment on the verdict against Farmers Mutual for the aggregate amount of the uninsured motorist coverage on each of the two automobiles, $30,000, and a reasonable attorney fee. The trial court determined the two coverages could not be aggregated, or "stacked," and entered judgment in the maximum amount of the coverage on one automobile for the death of one person,

$15,000, and an attorney fee of $11,818.30. We affirm.

The typed policy declarations state the limit of the uninsured motorist coverage on each of the two automobiles to be $15,000 for each person injured, up to a maximum of $30,000 for each occurrence. Farmers Mutual charged a separate premium of $9.10 for the combined uninsured motorist and bodily injury liability coverages on each of the two vehicles. The declarations also reflect that a "second car credit," or discount, was given with respect to each premium. The uninsured motorist agreement includes the following printed language:

The company's limit of liability shall not exceed $10,000 for all damages, including damages for care and loss of services arising out of bodily injury sustained by one person in any one accident and subject to this provision $20,000 for all such damages for bodily injury sustained by two or more persons in any one accident.

There is no dispute but that the limits of liability specified in the typed policy declarations control over the lesser limits printed in the foregoing policy provision. Neb. Rev. Stat. § 25-1216 (Reissue 1979); *Spencer-O'Neill House, Inc. v. Denbeck*, 196 Neb. 456, 243 N.W.2d 767 (1976).

At the relevant time Neb. Rev. Stat. § 60-509.01 (Reissue 1984) provided in pertinent part, as it does now:

No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state . . . unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 60-509, under provisions approved by the Director of Insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; *Provided*, that the named insured shall have the right to reject such coverage . . . .

Neb. Rev. Stat. § 60-509 (Reissue 1978) then required liability coverage of not less than $15,000 for bodily injury to or

the death of one person in any one accident and, subject to said limit for one person in any one accident, coverage of not less than $30,000 for bodily injury or death of two or more persons in any one accident.

We have been presented with several opportunities to interpret and apply § 60-509.01. In *Stephens v. Allied Mut. Ins. Co.*, 182 Neb. 562, 156 N.W.2d 133 (1968), the insurer sought, among other things, to reduce its uninsured motorist coverage by setting off against that coverage the amount it had paid under the medical payments coverage of the policy. This court reasoned that the policy behind the statute was to give one injured by an uninsured motorist the same protection he would have had if injured by one covered by a standard automobile liability policy. Holding that the statute was to be liberally construed, the court unanimously concluded that the provision permitting the setoff was void and against public policy, as it would have the effect of reducing the minimum coverage of uninsured motorist protection required by the statute.

The court again looked at the statute in *Protective Fire & Cas. Co. v. Woten*, 186 Neb. 212, 181 N.W.2d 835 (1970). Therein, Protective Fire provided uninsured motorist coverage to Woten, who was injured by an uninsured motorist while a guest passenger in an automobile owned by one Turner. Turner's insurer paid the full extent of its uninsured motorist coverage, equal to the statutorily required minimum, to Woten, the value of whose injuries exceeded the amount of Turner's coverage. The Protective Fire policy provided that if Woten were injured while occupying a nonowned automobile, it would apply only as excess insurance over other available similar insurance and, further, that with respect to its uninsured motorist coverage, Protective Fire would not be liable for a greater proportion of the loss than the applicable limit its liability bore "to the total applicable limits of liability of all valid and collectible insurance against such loss." *Id.* at 214, 181 N.W.2d at 836. Among other arguments, Protective Fire urged that under the foregoing "excess-escape" clause it had no liability to Woten, as the payment by Turner's insurer had placed Woten in the same position as if he had been injured by one carrying the standard automobile liability policy. This

court, one judge dissenting, rejected Protective Fire's argument and held that the excess-escape clause was prohibited by § 60-509.01, again characterizing the statute as an enactment for the benefit of the public and thus to be liberally construed. The dissenting judge pointed out that the result reached by the majority could be justified only if it were required by the language of § 60-509.01 but that in fact the statute made no such requirement.

*Bose v. American Family Mut. Ins. Co.*, 186 Neb. 209, 181 N.W.2d 839 (1970), decided unanimously the same day as *Protective Fire, supra,* held that the uninsured motorist coverages contained in two separate policies issued by the same insurer, each covering a different vehicle owned by the same insured, could be aggregated. Both policies contained clauses which provided that in the event there was other similar insurance coverage, the insurer's liability under the subject policy would be prorated in accordance with the relationship the insurer's limit of coverage bore to the total insurance available. The court concluded that the proration clauses would "defeat the spirit" of § 60-509.01 and were therefore unenforceable, placing at least some reliance on the fact that a separate premium had been paid for the uninsured motorist coverage embodied in each policy.

In *Pettid v. Edwards*, 195 Neb. 713, 240 N.W.2d 344 (1976), separate premiums had been paid for the uninsured motorist coverages provided under a single policy on two vehicles. A four-member majority of this court held that such coverages could not be aggregated in the face of a clause which provided that "[r]egardless of the number of automobiles to which this policy applies . . . [t]he limit of liability for [uninsured motorist coverage] stated in the declarations as applicable to 'each person' is the limit of [the insurer's] liability for all damages . . . sustained by one person as the result of any one accident . . . ." *Id.* at 715, 240 N.W.2d at 346. One dissenting judge, joined by the then Chief Justice and one other judge, who also dissented separately, was of the opinion that § 60-509.01 required aggregation of the coverages and interpreted the majority opinion to make the amount of statutorily required uninsured motorist coverage depend upon the number of policies issued

instead of the number of vehicles insured. The separately dissenting judge was also of the opinion the issue was controlled to the contrary by *Bose, supra*.

*Eich v. State Farm Mut. Automobile Ins. Co.*, 208 Neb. 714, 305 N.W.2d 621 (1981), *overruled on other grounds* 209 Neb. 396, 308 N.W.2d 503, presented policy language which defined an owned motor vehicle as the one "described in the declarations" and excluded coverage for injury "TO AN *INSURED* WHILE *OCCUPYING* OR THROUGH BEING STRUCK BY A LAND MOTOR VEHICLE OWNED BY THE NAMED INSURED OR ANY *RESIDENT* OF THE SAME HOUSEHOLD, IF SUCH VEHICLE IS NOT AN *OWNED MOTOR VEHICLE.*" *Id.* at 720-21, 305 N.W.2d at 625. The insured owned three vehicles, each of which was insured by a separate State Farm policy. Since only the vehicle insured by each policy was described in that policy's declarations, there was but one "owned" vehicle per policy. While driving a vehicle covered under one of the State Farm policies, the insured was injured in an accident involving an uninsured motorist. This court, with the present Chief Justice concurring on an unrelated point and two judges concurring without opinion, held the aforedescribed exclusion did not prevent aggregation of the coverages under all three policies, stating that the situation was controlled by *Bose v. American Family Mut. Ins. Co., supra*, and *Protective Fire & Cas. Co. v. Woten*, 186 Neb. 212, 181 N.W.2d 835 (1970). The *Eich* majority expressed the view that *Pettid* was logically irreconcilable with *Bose* and *Protective Fire*.

With that background Margaret Charley asks us either to overrule *Pettid* as unsound or to distinguish it from the instant case, on the basis that the language of the subject policy differs from that of the *Pettid* policy.

We adhere to *Pettid*, for its reasoning is not unsound. It was correctly decided, not because two vehicles were insured under a single policy, but because of the clarity of the policy language limiting the amount of uninsured motorist coverage available to the insured.

Section 60-509.01 neither requires nor prohibits the aggregation of multiple uninsured motorist coverages. The

statute requires only that an insurer offer uninsured motorist coverage on any automobile it insures for bodily injury liability. There is no language which requires that multiple uninsured motorist coverages, once provided, be aggregated no matter what the policy says with respect to the matter. Neither is there language which prohibits the aggregation of the uninsured motorist coverages provided. Once it is determined the statute neither requires nor prohibits the aggregation of multiple uninsured motorist coverages, the problem becomes one of determining what the contract of insurance in question provides.

The rules applicable to such an analysis are that a policy of insurance is to be construed as any other contract, so as to give effect to the intent of the parties at the time it was made. That intent is to be determined objectively, that is, by what a reasonable person would have understood the words to mean. If the policy is ambiguous, it is to be construed against the party drawing it, the insurer. *Swedberg v. Battle Creek Mut. Ins. Co.*, 218 Neb. 447, 356 N.W.2d 456 (1984).

The policy in *Pettid v. Edwards*, 195 Neb. 713, 240 N.W.2d 344 (1976), stated in intelligible and unambiguous language that regardless of the number of automobiles insured, the declared limit of the insurer's liability to "each person" would be the limit of its liability for all damages sustained by any one person in any one accident with an uninsured motorist. That language logically compelled the *Pettid* holding.

Illustrative of cases taking the view that whether multiple uninsured motorist coverages are to be aggregated depends upon the policy language are *Goodville Mut. v. Borror*, 221 Va. 967, 275 S.E.2d 625 (1981), and *Hampton v. Allstate Ins. Co.*, 126 Ariz. 403, 616 P.2d 78 (1980). *Goodville* held language similar to that of the *Pettid* policy prohibited aggregation of coverages on two automobiles under a single policy, notwithstanding the collection of two separate premiums. *Hampton* held that a policy provision which limited the amount of uninsured motorist coverage available to one person to the amount stated in the declarations as applicable to "each person" prevented the aggregation of the coverages provided on three vehicles insured under a single policy, notwithstanding

the fact that three premiums had been charged.

To be sure, cases can be found which permit aggregation of multiple coverages on the basis of the number of premiums charged. For example, *Gov. Emp. Ins. Co. v. Brown*, 446 So. 2d 1002 (Miss. 1984); *Gambrell v. Travelers Insurance*, 280 S.C. 69, 310 S.E.2d 814 (1983). However, we reject the reasoning of those cases as unsound.

Any argument that to disallow the aggregation of multiple uninsured motorist coverages gives the insurer a windfall overlooks the fact that the nature and extent of the protections sold by the insurer and purchased by the insured, and the charges made for them, are determined by the policy language. As explained in *Grimes v. Concord Gen'l Mut. Ins. Co.*, 120 N.H. 718, 422 A.2d 1312 (1980), holding that the multiple uninsured motorist coverages provided by a single policy could not be aggregated:

> When an insured owns two vehicles that are constantly available for use not only by him, but by members of his family and others, the risk that someone operating one of those vehicles will be involved in an accident with an uninsured motorist is obviously greater than if only one vehicle were available for use. Consequently, an insurance carrier's exposure to that risk may be enhanced. . . .

> We also reject the proposition that, as a matter of law, the payment of a double premium represents a windfall to the insurance carrier. To conclude otherwise would require that we overlook the fact that the setting of insurance rates is a "highly technical and complex" process . . . .

*Id.* at 721-22, 422 A.2d at 1315. Accord, *Hampton v. Allstate Ins. Co., supra.*

Having concluded that *Pettid* is not to be overruled, the question becomes one of determining whether the language of the policy under consideration demands a different result. It does not.

The clear meaning of the pertinent policy language is that Farmers Mutual would be liable for no more than $15,000 for all damages sustained by one person as the result of one accident with an uninsured motorist. The policy language in the instant case is remarkably similar to that found in *Hampton v.*

*Allstate Ins. Co., supra,* leading the *Hampton* court to a like result.

Our decision in *Stephens v. Allied Mut. Ins. Co.,* 182 Neb. 562, 156 N.W.2d 133 (1968), has no application to questions involving the aggregation of multiple uninsured motorist coverages, for *Stephens* attempted to offset the recovery had under one coverage against the recovery to be had from another unrelated coverage.

Whether the holdings or all of the reasoning found in *Protective Fire, Bose,* and *Eich* can be harmonized with an approach which requires an analysis of the policy language involved is a matter which is not presently before us and therefore need not be, and is not, addressed.

The judgment of the district court is correct and is affirmed.

AFFIRMED.

WHITE, J., dissenting.

The majority's conclusion that the result reached in this case is compelled by the clear and unambiguous policy language at issue carves an anomaly into Nebraska law by disallowing the "stacking" of multivehicle uninsured motorist coverage contained in a single policy and by disregarding previous decisions of this court which allow an insured to stack such coverage when holding two or more separate policies.

The term "stacking" refers to an insured's attempt to recover damages under more than one policy, endorsement, or coverage " 'by placing one policy, endorsement, or coverage, etc. upon another and recovering from each in succession until either all of his damages are satisfied or until the total limits of all policies, endorsements, coverages, etc. are exhausted, even though the insured has not been fully indemnified.' " (Citation omitted.) *Lopez v. Foundation Reserve Ins. Co., Inc.,* 98 N.M. 166, 168-69, 646 P.2d 1230, 1232-33 (1982).

In relying on this court's decision in *Pettid v. Edwards,* 195 Neb. 713, 240 N.W.2d 344 (1976), and the so-called "clarity of the policy language," the majority misses the crucial question presented in this case. That question is not whether multiple vehicles are insured under one policy or several but whether the insured has paid one premium or several for the particular uninsured motorist coverage sought to be stacked. This court

has previously allowed injured insureds to stack uninsured motorist coverage when there are two or more separate policies with such coverage in each. *Bose v. American Family Mut. Ins. Co.*, 186 Neb. 209, 181 N.W.2d 839 (1970). Therefore, it seems truly inconsistent to permit stacking in cases like *Bose* and deny it in cases where all the automobiles are insured under one policy but the *same* additional premiums are charged as would be charged if they were covered under multiple policies.

Other jurisdictions facing this issue and having statutes similar in all relevant aspects to Neb. Rev. Stat. § 60-509.01 (Reissue 1984) have not allowed the insurer to circumvent the intent of the uninsured motorist statute and deny the insured full coverage of the policy through the use of "limits of liability" clauses. In *Chaffee v. United States Fidelity & Guaranty Co.*, 181 Mont. 1, 591 P.2d 1102 (1979), the insured sought to combine the policy limits of his insurance based on the number of premiums paid on several vehicles insured under one policy of insurance. The appellant, Chaffee, had purchased automobile liability insurance from the appellee insurance company, which policy included a provision for uninsured motorist coverage in the amount of $10,000 for one person in any one accident. All three of the automobiles owned by the appellant were covered by the same policy, and separate, equal premiums were charged and paid for uninsured motorist coverage for each of the vehicles. The appellant's son, who was an insured by definition under the policy, was injured while riding in an uninsured vehicle owned and operated by a third party. Appellant's son died as a result of his injuries, and the appellant subsequently obtained a $304,000 judgment in a wrongful death action against the third party. Based on the adjudicated liability of the negligent third party, the appellant attempted to collect on his uninsured motorist coverage, contending that since he had paid premiums for uninsured motorist coverage on three vehicles, he was entitled to combine the policy limits to recover a total of $30,000.

The Supreme Court of Montana held that the appellant was entitled to combine the policy limits for uninsured motorist coverage based upon the number of vehicles for which he had paid premiums under one policy. The court refuted the "faulty

logic" and reasoning of the "lack of windfall" argument proffered by the insurance carrier as follows:

> There are no added risks to justify the full premium paid on the second and third vehicles. The risk in each case should be the same but becomes *less, not more*, when the coverage on the second and third vehicles is *reduced to coverage only while the insureds occupy the second and third vehicles.*

(Emphasis in original.) *Chaffee, supra* at 5, 591 P.2d at 1104. The court further found the uninsured motorist coverage on the first vehicle to be within the state's statute mandating the offering of such coverage, while the coverage on the second and third vehicles was found to be in violation of that statute. The court added that

> [t]he concept of uninsured motorist coverage although issued with the liability policy is not dependent on insured's negligence or *that the insured occupy a vehicle named in the insured's policy to recover for the insured loss. Federated American Insurance Co. v. Raynes,* 563 P.2d at 820. An attempted reduction of coverage of this kind simply takes the heart out of the policy and erodes the coverage to a point of no value simply because the policy on the first vehicle becomes the only *full* coverage.

(Emphasis in original.) *Chaffee, supra* at 6, 591 P.2d at 1104. Similar rationale was expressed by the dissenters of our own court in *Pettid* and is equally applicable to the present case.

The opinion cited with approval by the *Chaffee* court above is from the Washington Supreme Court. In *Federated American Ins. v. Raynes,* 88 Wash. 2d 439, 563 P.2d 815 (1977), even when the premium paid for uninsured motorist coverage on the second vehicle was slightly reduced, the court held that the insured could combine coverages under his policy with the carrier, and found the "limits of liability" clause in the policy to be in conflict with the statutory policy providing uninsured motorist coverage. In its opinion the *Raynes* court reasoned that the insured had paid two premiums for uninsured motorist coverage and was entitled to the full protection which he purchased, noting that form of protection should not control the limits of liability. The "limits of liability" provision in the

case was, in the estimation of the court, "an attempt to erode the amount of uninsured motorist coverage to which respondent is entitled." *Raynes, supra* at 448, 563 P.2d at 820.

In order to allow the "stacking" of multivehicle uninsured motorist coverages in a single policy, other courts have found that "limits of liability" clauses when read in conjunction with "separability" clauses create an ambiguity, and construed the policy in favor of the insured. See, e.g., *Blocker v. Aetna Casualty*, 232 Pa. Super. 111, 332 A.2d 476 (1975); *Gov. Emp. Ins. Co. v. Brown*, 446 So. 2d 1002 (Miss. 1984).

I believe, however, that it is unnecessary to search the corners of a policy for ambiguity. As the Alabama Supreme Court has stated, "Cases should not . . . turn on how well the insurer drafts a limiting clause because the law does not permit insurers to collect a premium for certain coverage, then take that coverage away by such a clause no matter how clear or unambiguous it may be." *Great Central Insurance Company v. Edge*, 292 Ala. 613, 617, 298 So. 2d 607, 610 (1974).

SHANAHAN and GRANT, JJ., join in this dissent.