DONALD A. KRACL, ALSO KNOWN AS DON A. KRACL, APPELLEE,
v. THE AETNA CASUALTY AND SURETY COMPANY, ALSO KNOWN AS
AETNA LIFE & CASUALTY OF HARTFORD, CONNECTICUT, THE
AUTOMOBILE INSURANCE COMPANY OF HARTFORD,
CONNECTICUT, GREAT PLAINS INSURANCE CO., INC., OMAHA,
NEBRASKA, APPELLANTS, FARMERS MUTUAL INSURANCE
COMPANY OF NEBRASKA, LINCOLN, NEBRASKA, APPELLEE.

374 N.W.2d 40

Filed September 27, 1985.    No. 84-147.

Daniel D. Jewell of Jewell, Gatz & Collins, for appellants

Aetna Casualty and Surety Company and The Automobile Insurance Company.

Jeffrey A. Silver, for appellant Great Plains Insurance Co.

Lawrence H. Yost of Yost, Schafersman, Yost, Lamme & Hillis, P.C., for appellee Kracl.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

This case involves two general issues: (1) The legal liability of one motor vehicle operator to the other for damages arising out of an automobile accident; and (2) The question of whether the uninsured motorist coverages of several policies of insurance may be "stacked."

All three insurance company appellants contest the finding of fault on the part of the uninsured motorist, and the resulting liability of them, and, with the exception of Automobile Insurance Company of Hartford, Connecticut, contest the "stacking" of policies. The defendant Farmers Mutual Insurance Company of Nebraska did not appeal.

This litigation arose out of an automobile accident which occurred on March 8, 1981, on Highway 91 in Platte County. It involved the eastbound pickup truck driven by the plaintiff and the westbound automobile driven by Gary Eisenmenger, the uninsured motorist.

At the time of the accident the plaintiff was an adult who lived with his mother and father and who owned the pickup truck, although it was registered in both his and his father's names. That truck was insured in the plaintiff's name by the defendant Automobile Insurance Company of Hartford, Connecticut, which provided for $30,000 of uninsured motorist coverage.

In addition, the following policies of insurance are involved in this litigation: A Great Plains Insurance Co., Inc., policy with $15,000 of uninsured motorist coverage, issued on a 1978 Chevrolet Corvette owned by and titled in the name of the plaintiff; an Aetna Casualty and Surety Company policy providing for $30,000 of uninsured motorist coverage, issued

on a 1979 Ford truck titled in the name of plaintiff's father and himself, and on a 1978 Ford LTD passenger automobile titled in the name of plaintiff's father and mother; and a Farmers Mutual Insurance Company of Nebraska policy which provided for $15,000 of uninsured motorist coverage, issued on a 1972 Ford truck owned by and titled in the name of plaintiff's father.

A jury was waived, and following trial to the court, it made formal "Findings of Fact," concluding that Eisenmenger was an uninsured motorist whose negligence was the sole proximate cause of the accident, that plaintiff was not guilty of contributory negligence, and that plaintiff suffered damages in the amount of $120,000. Judgment was then entered for plaintiff against the defendants Automobile Insurance Company of Hartford, Connecticut, and Aetna Casualty and Surety Company in the amount of $30,000 each, and against the defendants Great Plains Insurance Co., Inc., Omaha, Nebraska, and Farmers Mutual Insurance Company of Nebraska, Lincoln, Nebraska, in the amount of $15,000 each, together with attorney fees totaling $29,632.50, prorated proportionately among the various defendants.

Assigned as errors are the court's findings that the uninsured motorist coverages of Aetna and Great Plains are applicable as to this accident, and the findings that the uninsured motorist was negligent and the plaintiff was not contributorily negligent.

We discuss first the finding as to the tort liability of Eisenmenger. This was a near head-on collision. There was evidence of a considerable amount of drinking of alcoholic beverages by Eisenmenger for several hours preceding the time of the accident. He also testified that he did not remember anything about the events immediately preceding and at the time of the accident.

The testimony of the patrolman who investigated the accident indicated that when he arrived at the scene, plaintiff's pickup truck was sitting on the centerline of the highway, a little bit to the north, facing northeast, and the Eisenmenger automobile was on the south side of the highway, facing more or less northeast. The patrolman also found some skid marks on the highway surface, which he opined were left by the left

front wheel of the Eisenmenger automobile and the right front wheel of the plaintiff's truck. He concluded that the point of impact was the center of the highway.

Plaintiff testified that immediately before the accident he was driving east in the south lane and first saw the Eisenmenger automobile approximately 200 feet away, approaching him in, or just coming out of, the ditch on the south side of the highway. The plaintiff hit his brakes, but the other vehicle veered out of the ditch and hit him.

There was testimony from two of the physicians who had attended or examined plaintiff that plaintiff was not able to, i.e., did not, tell them any of the facts of the accident when questioned at a specific time, although neither party pursued that line of questioning.

An accident reconstruction specialist, called to testify by the plaintiff, gave as his opinion that at the time of the collision both vehicles were in the plaintiff's, or eastbound, lane of traffic, with the Eisenmenger vehicle headed in a northwest direction, apparently from the south side of the highway.

A witness with equally impressive credentials, called by the defendants, gave as his opinion that the automobiles could not have collided in the manner testified to by the first expert but, rather, that the collision occurred at a time when both vehicles were in the north lane, or the lane in which Eisenmenger properly belonged.

In sum, there was competent evidence to support conclusions that the sole proximate cause of the collision was the negligence of the plaintiff, or of Eisenmenger, depending upon whose testimony is believed.

In an action at law, where a jury has been waived and the evidence is in conflict, this court, in reviewing the judgment, will presume that the controverted facts were decided by the trial court in favor of the successful party, and those findings will not be disturbed on appeal unless clearly wrong. It is not within the province of this court to resolve conflicts in or reweigh the evidence. *Gregory v. Davis*, 214 Neb. 408, 334 N.W.2d 1 (1983). There is no merit to the assignments of error relating to the relative negligence of the two drivers.

The two policies written by the defendants Aetna and Great

Plains provided nearly identical provisions regarding the exclusion of uninsured motorist coverage. Aetna's policy is as follows: "A. We do not provide Uninsured Motorists Coverage for bodily injury sustained by any person: 1. While **occupying**, or when struck by, any motor vehicle or trailer of any type owned by you or any **family member** which is not insured for this coverage under this policy." The provision contained in the Great Plains policy reads: "Exclusions: This policy does not apply under Part IV: (a) to bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by the named insured or a relative, or through being struck by such an automobile."

The Great Plains policy describes an "insured automobile" as "(a) an automobile described in the policy for which a specific premium charge indicates that coverage is afforded."

These appellants assign as error the district court's decision to allow the uninsured motorist coverage of those two policies of insurance to be "stacked" in order to cover the plaintiff's injuries.

Neb. Rev. Stat. § 60-509.01 (Reissue 1984) provides in pertinent part:

> No policy insuring against loss resulting from liability imposed by law for bodily injury . . . suffered by any person arising out of . . . use of a motor vehicle shall be . . . issued . . . unless coverage is provided . . . in limits for bodily injury . . . set forth in section 60-509 . . . for the protection of persons insured thereunder who are legally entitled to recover damages from . . . operators of uninsured motor vehicles . . . because of bodily injury . . . resulting therefrom; *Provided,* that the named insured shall have the right to reject such coverage; . . . .

This section, however, neither requires nor prohibits the aggregation of multiple uninsured motorist coverage. *Charley v. Farmers Mut. Ins. Co.*, 219 Neb. 765, 366 N.W.2d 417 (1985).

> The statute requires only that an insurer offer uninsured motorist coverage on any automobile it insures for bodily injury liability. There is no language which requires that multiple uninsured motorist coverages, once provided, be

aggregated no matter what the policy says with respect to the matter. Neither is there language which prohibits the aggregation of the uninsured motorist coverages provided.

*Id.* at 769-70, 366 N.W.2d at 421.

As the statute neither requires nor prohibits stacking, the question then becomes, What does the language of the insurance policy in question provide? *Charley, supra.*

This shift back to interpreting insurance contracts under the letter of the law is in sharp contrast to earlier cases which seemingly looked to the spirit of the law in interpreting various uninsured motorist provisions. *Bose v. American Family Mut. Ins. Co.*, 186 Neb. 209, 181 N.W.2d 839 (1970); *Protective Fire & Cas. Co. v. Woten*, 186 Neb. 212, 181 N.W.2d 835 (1970); *Eich v. State Farm Mut. Automobile Ins. Co.*, 208 Neb. 714, 305 N.W.2d 621 (1981), *overruled on other grounds* 209 Neb. 396, 308 N.W.2d 503 (1981).

In these cases § 60-509.01 was viewed as remedial in nature, *Lane v. State Farm Mut. Automobile Ins. Co.*, 209 Neb. 396, 308 N.W.2d 503 (1981), and the statute was broadly construed to benefit the innocent victim of the financially irresponsible uninsured motorist. *Protective Fire, supra; Eich, supra.* By such broad interpretation in favor of the victim, this court was able to invalidate "other insurance," "proration," or "excess escape" clauses which acted to limit an insurer's liability. Viewing "stacking" as simply an outgrowth of the insured's reasonable expectation of coverage where premiums were paid to protect the accident victims, this court allowed aggregation in an attempt to more fully compensate the victim for his injuries at the hands of an uninsured motorist. *Eich, supra; Protective Fire, supra; Bose, supra.*

*Charley, supra,* shifted the focus to earlier case law which reasoned that the policy behind the statute was to give a person injured by an uninsured motorist the same protection he would have had if injured by one covered by a standard automobile liability policy. *Stephens v. Allied Mut. Ins. Co.*, 182 Neb. 562, 156 N.W.2d 133 (1968).

Thus, the party's reasonable expectation of coverage is to be measured not by premiums paid but by the clear terms of the

insurance policy as understood by the reasonable, ordinary man.

> The rules applicable to such an analysis are that a policy of insurance is to be construed as any other contract, so as to give effect to the intent of the parties at the time it was made. That intent is to be determined objectively, that is, by what a reasonable person would have understood the words to mean. If the policy is ambiguous, it is to be construed against the party drawing it, the insurer. *Swedberg v. Battle Creek Mut. Ins. Co.*, 218 Neb. 447, 356 N.W.2d 456 (1984).

*Charley, supra* at 770, 366 N.W.2d at 421.

While *Charley* was written with respect to interpreting one insurance policy insuring two vehicles, whereas here the court is considering several different policies on different vehicles, to distinguish *Charley* as not controlling based on this fact alone is to exalt form over substance.

Looking, then, to the policies which are challenged on appeal, the plaintiff held an insurance policy on his Chevrolet Corvette issued by appellant Great Plains Insurance Co. The policy provided for uninsured motorist coverage for "the named insured and any relative." Coverage, however, did not extend "(a) to bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by the named insured or a relative, or through being struck by such an automobile." An "insured automobile" was defined *inter alia* as "(a) an automobile described in the policy for which a specific premium charge indicates that coverage is afforded." The policy covered only the Corvette.

The plain terms of the contract extend coverage to the named insured (or relative) while occupying an owned automobile, only if that automobile is specifically covered by the declaration in the policy.

The plaintiff's father carried an insurance policy on his 1979 truck and 1978 Ford LTD from appellant Aetna Casualty and Surety Co. The policy provided uninsured motorist coverage for the insured and any family member or any other person occupying the covered automobile. The plaintiff was a family member. "Covered auto" is defined as "[a]ny vehicle shown in

the Declarations." These vehicles were the 1979 truck and the 1978 Ford LTD.

The exclusion from coverage for uninsured motorist provided: "A. We do not provide Uninsured Motorists Coverage for bodily injury sustained by any person: 1. While **occupying**, or when struck by, any motor vehicle or trailer of any type owned by you or any **family member** which is not insured for this coverage under this policy."

Once again, the language of the contract is clear: no coverage exists as to an owned automobile beyond that found while in the named "covered" automobile. While family members are "covered," coverage does not extend while family members are in other vehicles owned by them or the named insured that are not described in the specific policy.

Referring for a moment to the liability coverage on standard automobile insurance policies, we do not believe that it would be seriously argued that one who was injured because of the negligent operation of insured's auto $A$, insured for $100,000 in a separate policy, could "stack" similar coverages of $100,000 from each of two additional policies insuring insured's autos $B$ and $C$, and thereby have available $300,000 of coverage.

Coverage would not be available in this instance from the latter two policies because of the standard exclusions, which read in substance that coverage is not provided "[f]or the ownership, maintenance or use of any vehicle, other than **your covered auto**, which is owned by you [insured] or furnished or available for your regular use," or the policy does not apply "to the ownership, maintenance, operation, use . . . of an automobile . . . acquired by the named insured during the policy period . . . if the named insured has purchased other automobile liability insurance applicable to such automobile . . . ."

These provisions would seem to prohibit "stacking" of liability coverage in those instances, as do the clear terms of the policies in the instant case preclude recovery by the plaintiff here.

Such a conclusion is not contrary to public policy. As noted earlier, there is no public policy requiring stacking. *Charley v. Farmers Mut. Ins. Co.*, 219 Neb. 765, 366 N.W.2d 417 (1985). And as case law has long enunciated, an insurer may by

contract limit its liability as long as it does not violate public policy. *Swedberg v. Battle Creek Mut. Ins. Co.*, 218 Neb. 447, 356 N.W.2d 456 (1984).

Further, as the language of a contract is the final expression of the intent of the parties, *Moreland v. Transit Auth. of Omaha*, 217 Neb. 775, 352 N.W.2d 556 (1984), and *Meyers v. Frohm Holdings, Inc.*, 211 Neb. 329, 318 N.W.2d 716 (1982), denying recovery under these two policies does not fly in the face of the reasonable expectations of the parties.

Neither does denial of benefits give a windfall to the insurance company, as earlier cases suggest. See *Protective Fire & Cas. Co. v. Woten*, 186 Neb. 212, 181 N.W.2d 835 (1970).

> Any argument that to disallow the aggregation of multiple uninsured motorist coverages gives the insurer a windfall overlooks the fact that the nature and extent of the protections sold by the insurer and purchased by the insured, and the charges made for them, are determined by the policy language.

*Charley, supra* at 771, 366 N.W.2d at 421-22.

As for the argument the denial of "stacking" affords the victim less than complete recovery for his injuries, *Bose v. American Family Mut. Ins. Co.*, 186 Neb. 209, 181 N.W.2d 839 (1970), *Protective Fire, supra*, and *Eich v. State Farm Mut. Automobile Ins. Co.*, 208 Neb. 714, 305 N.W.2d 621 (1981), anyone purchasing uninsured motorist coverage is not limited to the amount stated in Neb. Rev. Stat. § 60-509 (Reissue 1984). The statute states only the minimum amount of coverage required. Any insured is free to negotiate for greater coverage within a given policy. *Pettid v. Edwards*, 195 Neb. 713, 240 N.W.2d 344 (1976). The mere fact that an insured purchases coverage which is less than adequate to cover the loss, be it uninsured motorist, liability coverage, or physical damage coverage, does not operate to invalidate the policy, nor does it violate public policy.

We hold that where a provision of a policy of automobile insurance clearly limits its applicability as to uninsured motorist coverage to the "covered" automobile, to the exclusion of other insured-owned automobiles not covered by that particular policy, such prohibition against "stacking" of coverage does

not violate the spirit or the letter of § 60-509.01.

Accordingly, the judgments of the district court against the defendants Aetna Casualty and Surety Company and Great Plains Insurance Co., Inc., are reversed, and the cause is remanded with directions to dismiss as to those defendants. The judgment as to the defendant Automobile Insurance Company of Hartford, Connecticut, is affirmed.

To the extent that the holdings in *Bose v. American Family Mut. Ins. Co.*, 186 Neb. 209, 181 N.W.2d 839 (1970), *Protective Fire & Cas. Co. v. Woten*, 186 Neb. 212, 181 N.W.2d 835 (1970), and *Eich v. State Farm Mut. Automobile Ins. Co.*, 208 Neb. 714, 305 N.W.2d 621 (1981), are contrary to this opinion, they are overruled.

AFFIRMED IN PART, AND IN PART REVERSED
WITH DIRECTIONS TO DISMISS.