TIMOTHY WESTON, APPELLANT, V. CONTINENTAL
WESTERN INSURANCE COMPANY, APPELLEE.
720 N.W.2d 904

Filed August 29, 2006.   No. A-04-1185.

David J. Cullan for appellant.

Stephanie Frazier Stacy, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellee.

IRWIN, MOORE, and CASSEL, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Timothy Weston appeals an order of the district court for Box Butte County, Nebraska, which granted summary judgment in favor of Continental Western Insurance Company (Continental) on Weston's complaint to recover uninsured motorist benefits.

On appeal, Weston challenges the district court's holding that Weston is statutorily prohibited from "stacking" multiple uninsured motorist coverages. We find no error in the district court's legal conclusions, and we affirm the court's grant of summary judgment in favor of Continental.

## II. BACKGROUND

### 1. FACTUAL AND PROCEDURAL BACKGROUND

On June 1, 2002, Weston was a passenger in a vehicle owned and operated by an uninsured motorist. On that date, the uninsured motorist "lost control of his vehicle [and] proceeded . . . into the . . . ditch and rolled. All passengers, including [Weston], were ejected." Weston alleged that he suffered personal injuries as a result of the accident.

The record indicates that on the date of the accident, Weston had two separate potentially applicable insurance policies, each from a different insurance company. First, Weston was insured by a personal automobile policy with Farmers Insurance Group (Farmers), which policy included uninsured motorist coverage with a policy limit of $100,000. Second, Weston was insured by a "contractors policy" with Continental, which policy also included uninsured motorist coverage with a policy limit of $100,000.

Following the accident, Weston made a claim for uninsured motorist benefits with Farmers and reached a settlement which included payment of $100,000 in uninsured motorist benefits. On December 9, 2003, Weston filed a complaint against Continental seeking additional uninsured motorist benefits pursuant to Weston's policy with Continental. On March 12, 2004, Continental filed an answer in which, inter alia, Continental alleged that Weston had already received the maximum uninsured motorist benefit to which he was legally entitled and that the uninsured motorist coverage in the Continental policy did not cover the accident.

On May 6, 2004, Continental filed a motion for summary judgment. In support of the motion, Continental offered, and the court received, a copy of the complaint, a copy of the answer, and a copy of Weston's answers to requests for admissions. Weston offered no evidence in opposition to the motion, although he did

file a written response to the motion on May 13. Additionally, Weston raised various constitutional issues, including unlawful taking and alleged unconstitutionality of various statutes. None of the constitutional issues has been raised on appeal.

On October 13, 2004, the district court filed a journal entry sustaining Continental's motion for summary judgment. The court held that Weston was prohibited from "stacking" his uninsured motorist coverages from Farmers and Continental. The court specifically held that the maximum uninsured motorist benefit to which Weston was entitled was $100,000 because that sum was the highest limit of either individual potentially applicable policy, that Weston had already received $100,000 from Farmers, and that Continental was entitled to summary judgment because Weston had already received the maximum uninsured motorist benefit to which he was entitled. This appeal followed.

## 2. WESTON'S RECORD ON APPEAL

As noted above, the only evidence presented to the district court for resolution of the summary judgment motion was the three exhibits offered by Continental: the complaint, the answer, and Weston's answers to requests for admissions. Weston offered no evidence in opposition to the motion for summary judgment, and neither party offered a copy of the Continental policy at issue.

Nonetheless, Weston attached to his appellate brief an "appendix" consisting of four pages which appear to be an excerpt from the Continental policy. Weston also filed, on February 14, 2005, a praecipe for a supplemental transcript, in which he requested a supplemental transcript to include "the following additional pleading with attached Exhibits A and B: 7. Plaintiff's Request for Admission (with Exhibit A and Exhibit B attached thereto)." (Emphasis omitted.) The supplemental transcript prepared in response to this praecipe includes requests for admissions served by Weston on Continental, seeking Continental's admissions to various matters, and also includes what appears to be a copy of the Continental policy. The portion of the supplemental transcript which appears to be a copy of the Continental policy totals more than 130 pages. All contents of the supplemental transcript bear file stamps indicating that the documents were filed with the

district court on February 14, approximately 4 months after the district court rendered its judgment.

Weston's counsel conceded during oral argument that the materials in the supplemental transcript are not properly considered part of the record on appeal. As the parties recognized during oral argument, the Nebraska Supreme Court has held that evidence to be considered on appeal from a summary judgment must be properly marked, offered, and accepted by the trial court as evidence and made a part of the bill of exceptions to be properly considered part of the record on appeal. See, *Zannini v. Ameritrade Holding Corp.*, 266 Neb. 492, 667 N.W.2d 222 (2003); *Rath v. Selection Research, Inc.*, 246 Neb. 340, 519 N.W.2d 503 (1994). Simply filing documents after a hearing on summary judgment does not make the documents a proper part of the record on appeal and does not provide a basis for the appellate court to consider materials that were never offered to the trial court. See *Rath v. Selection Research, Inc., supra.* "[E]xhibits which were not 'offered, marked, or received by the trial judge at the summary judgment hearing . . . may not be considered on appeal.'" *Zannini v. Ameritrade Holding Corp.*, 266 Neb. at 498, 667 N.W.2d at 229, quoting *Rodriguez v. Nielsen*, 259 Neb. 264, 609 N.W.2d 368 (2000).

## III. ASSIGNMENT OF ERROR

Weston's sole assignment of error on appeal is that the district court erred in granting Continental's motion for summary judgment.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Cerny v. Longley*, 270 Neb. 706, 708 N.W.2d 219 (2005). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

### 2. HISTORICAL DEVELOPMENT OF NEBRASKA LAW CONCERNING "STACKING"

The issue raised by Weston in this appeal is whether the trial court correctly interpreted Nebraska statutory law as prohibiting the "stacking" of uninsured motorist coverages from two separate insurance policies. Resolution of that issue would benefit from a brief review of the historical development of Nebraska law concerning uninsured motorist coverage and "stacking."

■ The meaning of the term "stacking" was set forth in a clear and concise fashion in the dissenting opinion in *Charley v. Farmers Mut. Ins. Co.*, 219 Neb. 765, 366 N.W.2d 417 (1985). The dissent noted:

> The term "stacking" refers to an insured's attempt to recover damages under more than one policy, endorsement, or coverage " 'by placing one policy, endorsement, or coverage, etc. upon another and recovering from each in succession until either all of his damages are satisfied or until the total limits of all policies, endorsements, coverages, etc. are exhausted, even though the insured has not been fully indemnified.' "

*Id.* at 772, 366 N.W.2d at 422 (White, J., dissenting), quoting *Lopez v. Foundation Reserve Ins. Co., Inc.*, 98 N.M. 166, 646 P.2d 1230 (1982).

Prior to 1986, Nebraska law required insurers to offer uninsured motorist coverage to insureds, but did not include any specific statutory provision addressing the issue of stacking such coverage. See, Neb. Rev. Stat. § 60-509.01 (Reissue 1978); *Charley v. Farmers Mut. Ins. Co., supra.* The Nebraska Supreme Court recognized as much in *Charley*. In *Charley*, the issue was whether a deceased's estate could stack two uninsured motorist provisions contained within a single policy but covering two vehicles and for which the insureds had paid separate premiums. The court held, "Section 60-509.01 neither require[d] nor prohibit[ed] the aggregation of multiple uninsured motorist coverages." *Charley v. Farmers Mut. Ins. Co.*, 219 Neb. at 769, 366 N.W.2d at 421. "There [was] no language which require[d] that multiple uninsured motorist coverages, once provided, be aggregated no matter what the policy says with respect to the matter. Neither [was] there language which prohibit[ed] the aggregation

of the uninsured motorist coverages provided." *Id.* at 770, 366 N.W.2d at 421.

In *Kracl v. Aetna Cas. & Surety Co.*, 220 Neb. 869, 374 N.W.2d 40 (1985), the Nebraska Supreme Court again concluded that the statutes then in effect did not specifically address stacking. The court noted that its decision in *Charley* shifted the focus from looking "to the spirit of the law in interpreting various uninsured motorist provisions" to instead "interpreting insurance contracts under the letter of the law." *Kracl v. Aetna Cas. & Surety Co.*, 220 Neb. at 874, 374 N.W.2d at 44. Prior to *Charley* and *Kracl*, the court had viewed § 60-509.01 "as remedial in nature" and had construed the statute broadly "to benefit the innocent victim of the financially irresponsible uninsured motorist." *Kracl v. Aetna Cas. & Surety Co.*, 220 Neb. at 874, 374 N.W.2d at 44. As such, in prior cases, the court had viewed stacking as a reasonable expectation of coverage and had allowed stacking "in an attempt to more fully compensate the victim for his injuries at the hands of an uninsured motorist." *Id.*

In 1986, the Nebraska Legislature passed 1986 Neb. Laws, L.B. 573. L.B. 573 created Nebraska's version of the Underinsured Motorist Insurance Coverage Act and included specific statutory provisions addressing stacking of underinsured motorist coverages. See Neb. Rev. Stat. §§ 60-579 and 60-580 (Reissue 1988). Section 60-579 specifically provided that "the limits of liability for underinsured motorist coverage for two or more motor vehicles insured under the same policy or separate policies shall not be added together, combined, or stacked to determine the limit of insurance coverage available to an injured person for any one accident." Section 60-580(1) specifically provided that "[i]n the event an insured [was] entitled to underinsured motorist coverage under more than one policy . . . the maximum amount an insured may recover shall not exceed the highest limit of any one such policy."

■ In 1994, the Nebraska Legislature passed 1994 Neb. Laws, L.B. 1074. See Neb. Rev. Stat. §§ 44-6401 through 44-6414 (Reissue 2004). L.B. 1074 created Nebraska's version of the Uninsured and Underinsured Motorist Insurance Coverage Act and made various statutory provisions previously applicable

to just the uninsured or the underinsured applicable to both. Relevant to the present case, § 44-6410 specifically provides:

> Regardless of the number of vehicles involved, persons covered, claims made, vehicles or premiums shown on the policy, or premiums paid, the limits of liability for uninsured or underinsured motorist coverage for two or more motor vehicles insured under the same policy or separate policies shall not be added together, combined, or stacked to determine the limit of insurance coverage available to an injured person for any one accident except as provided in section 44-6411.

Section 44-6411(1) specifically provides, "In the event an insured is entitled to uninsured or underinsured motorist coverage under more than one policy of motor vehicle liability insurance, the maximum amount an insured may recover shall not exceed the highest limit of any one such policy."

In *Nicholson v. General Cas. Co. of Wis.*, 255 Neb. 937, 587 N.W.2d 867 (1999), the Nebraska Supreme Court recognized that the plain language of § 60-580(1) (Reissue 1993) concerning underinsured motorist coverage, which language had not changed since its 1986 inception as set forth above and is now codified at § 44-6411(1) concerning both uninsured and underinsured motorist coverage, limited an insured's recovery to the highest limit of any applicable policies. The court noted that

> even if payment of the full amount of [the highest limit set forth in one of the applicable policies] did not result in full compensation, [the insured] would have no right to recover under [another policy] because he would have already received the maximum underinsured motorist recovery permitted . . . i.e., the highest limit of the two applicable policies.

*Nicholson v. General Cas. Co. of Wis.*, 255 Neb. at 941, 587 N.W.2d at 870.

### 3. APPLICATION AND RESOLUTION

In the present case, Weston alleges that the trial court erred in relying on §§ 44-6410 and 44-6411 to find that stacking of Weston's uninsured motorist coverages was prohibited, because Weston's insurance policy with Continental did not contain any

specific restrictions to prevent stacking and did not specifically reference §§ 44-6410 and 44-6411. Weston argues that the language of the Continental policy clearly and unambiguously provides that Continental will pay damages to which Weston is legally entitled. As such, Weston argues that the trial court erred in granting summary judgment in favor of Continental. We disagree.

Initially, as noted above, the actual policy at issue in this case is not properly in the record presented by Weston on appeal. Neither party offered the Continental policy as evidence at trial, and the policy was not before the trial court when that court ruled on Continental's motion for summary judgment. The pleadings establish that the policy included a provision for uninsured motorist coverage, with a limit of $100,000. Weston admitted that he had uninsured motorist coverage, with a limit of $100,000, under a separate policy with Farmers and that he had previously negotiated a settlement with Farmers and received a $100,000 payment under that policy, reaching its limit.

For purposes of our discussion, we cannot conclude that the Continental policy contains no restrictions against stacking, and we cannot simply accept the various quotations, allegedly from the policy language, interspersed throughout Weston's appellate brief as being accurate reflections of the actual language of the policy. Weston failed to introduce the policy into evidence and thereby failed to make a proper record for our consideration of the actual policy language on appeal. Even assuming, however, that the policy simply provides uninsured motorist coverage with a limit of $100,000 and makes no specific representations either allowing or prohibiting stacking of the coverage with any other policy or uninsured motorist coverage, we conclude that the trial court correctly concluded that stacking is prohibited by §§ 44-6410 and 44-6411.

As set forth above, there was a time when the Nebraska Supreme Court specifically recognized the lack of any statutory directive concerning stacking of uninsured motorist coverages. See, *Kracl v. Aetna Cas. & Surety Co.*, 220 Neb. 869, 374 N.W.2d 40 (1985); *Charley v. Farmers Mut. Ins. Co.*, 219 Neb. 765, 366 N.W.2d 417 (1985). Subsequent to that recognition, however, the Nebraska Legislature enacted specific prohibitions

against stacking of underinsured motorist coverages, and those specific prohibitions now apply to both uninsured and underinsured motorist coverages. See, § 44-6410; *Nicholson v. General Cas. Co. of Wis.*, 255 Neb. 937, 587 N.W.2d 867 (1999). The plain language of §§ 44-6410 and 44-6411 indicates that stacking of uninsured motorist coverages is prohibited and that an insured's maximum recovery of uninsured motorist benefits is the highest limit of any one applicable policy.

Applying past cases and the plain language of §§ 44-6410 and 44-6411 to the facts of Weston's case leads us to conclude the trial court correctly concluded that Weston was not entitled to stack his uninsured motorist coverages, that Weston had already received his maximum recovery for uninsured motorist benefits, and that Continental was entitled to summary judgment. Again, §§ 44-6410 and 44-6411 clearly indicate that an insured may not stack multiple uninsured motorist coverages and that an insured's maximum recovery for uninsured motorist benefits is the highest limit of any one applicable policy. The evidence offered by Continental indicates Weston has admitted that both policies had identical limits of $100,000 for uninsured motorist benefits and that he had previously negotiated a settlement and received benefits of $100,000 under the uninsured motorist coverage of the Farmers insurance policy. As such, Weston would not be entitled to any uninsured motorist benefits from Continental. See *Nicholson v. General Cas. Co. of Wis., supra.*

Finally, we note Weston devotes a significant portion of his brief on appeal to arguing the longstanding propositions in Nebraska that an insurance carrier and its insured are free to contract for more favorable coverage than the minimum required by law, that policies must be interpreted according to their plain language absent ambiguities, and that public policy should favor promoting trust and goodwill by not imposing restrictions on insurance policies that are not clearly set forth in the policies' language. We agree with all of these propositions, but find none of them to have an impact on the resolution of this case.

As Weston notes, § 44-6413(4) specifically authorizes insurers and insureds to negotiate "coverage under terms and con-ditions more favorable to [the] insured or in limits higher than are required by the act." This court has recognized that "[t]his

provision necessarily suggests, and common sense dictates, that insurers may not issue policies which carry terms and conditions less favorable to the insured than those provided in the act." *American States Ins. v. Farm Bureau Ins.*, 7 Neb. App. 507, 517, 583 N.W.2d 358, 365 (1998). However, as already established, §§ 44-6410 and 44-6411 specifically provide that stacking of uninsured motorist coverages is prohibited. Although § 44-6413(4) would certainly allow an insurer and its insured to negotiate more favorable coverage and would arguably allow for such stacking to be negotiated, there is nothing in the record presented on appeal to suggest that any such negotiation occurred in this case. See *Nicholson v. General Cas. Co., supra* (noting that statutes did not prohibit coverage more favorable than terms required by statutes, but recognizing that policy contained no indication that such coverage was intended). There is nothing in the record presented by Weston on appeal to indicate that any plain language in the Continental policy would suggest that the parties negotiated to allow stacking.

Further, the Nebraska Supreme Court has previously held that there is no public policy requiring stacking. See *Kracl v. Aetna Cas. & Surety Co.*, 220 Neb. 869, 374 N.W.2d 40 (1985). As the Nebraska Supreme Court has recognized, because the law allows insurers and insureds to negotiate more favorable coverage than the minimums required by law, if the effect of denying stacking results in an insured's receiving less than complete recovery for his injuries, public policy is not violated. See *id.* It is merely a fact that the insured purchased coverage which was less than adequate to cover the loss. See *id.*

## V. CONCLUSION

Nebraska's Uninsured and Underinsured Motorist Insurance Coverage Act prohibits stacking of uninsured motorist coverages and provides that the maximum recovery to which an insured is entitled is the highest limit of any one applicable policy. In this case, the trial court did not err in concluding that Weston had already received the maximum recovery to which he was entitled and in granting summary judgment in favor of Continental. The trial court's judgment is affirmed.

AFFIRMED.